```
                                UNITED STATES DISTRICT COURT
                                SOUTHERN DISTRICT OF FLORIDA

                                CASE NO.13-23013-CIV-GAYLES
                                MAGISTRATE JUDGE P.A. WHITE

PLEADRO J. SCOTT,             :

     Plaintiff,               :

v.                            :         SECOND
                                     SUPPLEMENTAL REPORT OF
MIAMI DADE DEPT. OF CORR.,           MAGISTRATE JUDGE
et al.,                       :

     Defendants.              :
_____
```

I.   Introduction

The plaintiff, Pleadro J. Scott, while confined at Metro West Detention Center, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for damages. (DE#1). The plaintiff was granted leave to proceed in forma pauperis by separate order. (DE#6).

This civil action is before the Court for screening of the second amended complaint pursuant to 28 U.S.C. §1915 (DE#65).

II.   Analysis

A.   Applicable Law for Screening

As amended, 28 U.S.C. §1915 reads in pertinent part as follows:

   Sec. 1915 Proceedings in Forma Pauperis

                  *   *   *

       (e)(2) Notwithstanding any filing fee, or any
   portion thereof, that may have been paid, the court shall
   dismiss the case at any time if the court determines that
   –

```
                    *    *    *
        (B) the action or appeal –

                    *    *    *

        (i)  is frivolous or malicious;

        (ii) fails to state a claim on which relief
        may be granted; or

        (iii) seeks monetary relief from a defendant
        who is immune from such relief.
```

This is a civil rights action Pursuant to 42 U.S.C. §1983. Such actions require the deprivation of a federally protected right by a person acting under color of state law. See 42 U.S.C. 1983; Polk County v Dodson, 454 U.S.312 (1981); Whitehorn v Harrelson, 758 F. 2d 1416, 1419 (11th Cir. 1985). The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under 28 U.S.C. §1915(e)(2)(B) or Fed.R.Civ.P. 12(b)(6) or (c).  See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). A complaint is "frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)").  In order

to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998).

To determine whether a complaint fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Twombly applies to §1983 prisoner actions. See Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Second, the Court must determine whether the complaint states a plausible claim for relief. Id. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred.[1]

B. Initial Complaint (DE#1)

In the initial complaint (DE#1) the plaintiff named as defendants the Miami-Dade Department of Corrections, along with

---

[1] The application of the Twombly standard was clarified in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

Officers West, Brown, Jefferson, Farai, Cobra and Director Timothy Ryan. He alleged that in March of 2013, he filed a grievance requesting to be separated from Inmate Dean, because he was a member of a gang that was "out to get" him. He also sought to be separated from other inmates since he did not know who else was involved. He spoke to Supervisors Brown and Ferai at Turner Guilford Knight Detention Center, as well as Officers West and Jefferson at the Metro-West Detention Center, along with other unnamed officers, to have him kept away from other inmates. He further sought to have this information placed on his jail cell card. He also wrote a letter to Director Ryan, requesting he be kept separate, and a letter to Judge Jorge Rodriguez who recommended that he be moved.

However, on May 15, 2013, he was taken to court and forced to share a holding cell with Inmate Dean. He tried to inform the officer that Dean was violent towards him, but was told there was no information on his jail card. Inmate Dean attacked him, resulting in pain in his left jaw, neck, right shoulder, and lower back. His request to go to medical was denied and he was provided with Advil. He includes grievances requesting he be separated from Inmate Dean and other inmates.

A Report was entered recommending the case proceed on a claim of endangerment against Officers West and Jefferson. (DE#7). It further recommended that Defendants Ryan, Cobra, Miami-Dade Department of Corrections, Brown and Ferai be dismissed for failure to state a claim against them, pursuant to 28 U.S.C. §1915i(e)(2)(B)(ii). (Id.). The Report was adopted on January 7, 2014. (DE#8).

C. Amended Complaint (DE#29)

In his amended complaint, plaintiff once again named Sergeant H. Jefferson, and for the first time named Lieutenant C. Weston, Corporal R. Gomez, Officer Jane Doe and Inmate Anterell Dean. (DE#29). According to plaintiff, on March 5, 2013, he filed a grievance requesting to be kept separate from Inmate Dean since he was part of a known gang that was "out to get him." (Id.). In an abundance of caution, plaintiff sought to be separated from all other inmates as well. (Id.). With respect to his concerns, plaintiff spoke with several individuals, including Lt. C. Weston, Sgt. H. Jefferson, Cpl. R. Gomez and Ofc. Jane Doe. (Id.). In response, Weston, Jefferson and Gomez assured plaintiff that the proper protocol had been implemented to separate plaintiff from all inmates at all times, including a notification on plaintiff's jail card placing all staff on notice. (Id.).

Notwithstanding the foregoing, on May 15, 2013, Ofc. Jane Doe, assigned to the Bridge Holding Cell, forced plaintiff into a holding cell with Inmate Dean because his jail card was devoid of any notification indicating he should be kept separate from all inmates. (DE#29). While in the same cell with Inmate Dean, without warning, Dean attacked plaintiff striking him in the head, face, jaw and slammed him against the wall and toilet, which continued until an unnamed officer intervened. (Id.).

Plaintiff was subsequently transported to medical, at which time he did not feel any pain. (DE#29). However, the next morning plaintiff felt severe pain to his back and jaw and some minor pain to his head, all of which continued for an extended period of time. (Id.).

Plaintiff then filed a grievance explaining that despite his request being approved to be kept separate from inmates, he was nonetheless forced into a cell with Inmate Dean. (DE#29). In response, plaintiff was notified there was no record of any approval requiring a separation. (Id.).

Accordingly, plaintiff concluded that Weston, Jefferson and Gomez's failure to attach to plaintiff's jail card that he should be kept separate from all inmates, including Inmate Dean, led to his assault. (DE#29). Had any of the defendants taken the proper steps, the incident would never have occurred. (Id.).

A Report was entered recommending the case proceed on a claim of endangerment against Jefferson, Weston, Gomez and Jane Doe. (DE#33). It further recommended that plaintiff's claim of assault and battery against Inmate Dean be dismissed for failure to state a claim. (Id.). The Report was adopted on August 26, 2014. (DE#35).

D. Statement of the Claims: Second Amended Complaint (DE#65)

In his second amended complaint, as he did with his initial complaint, plaintiff once again names the Miami-Dade Department of Corrections. (DE#65:1). Moreover, as with his amended complaint, he names Sergeant H. Jefferson, Lieutenant C. Weston, Corporal R. Gomez and Officer Jane Doe. (Id.).

As way of background, plaintiff explains that on June 20, 2011, while housed at Turner Guilford Knight Detention Center ("TGK"), he was assaulted by gang members. (DE#65:1). On that same day, he informed Cpl. Tompkins of the assault, which resulted in plaintiff's placement in a one man cell under protective custody. (Id.). A notification was also placed on plaintiff's jail card,

6

placing all staff on notice that plaintiff was to be kept separate from certain individuals. (Id.). Notwithstanding the efforts taken for plaintiff's safe keeping, other inmates, who were also members of the gang who attacked plaintiff, nonetheless continued to make violent threats against him. (Id.). In addition to filing a grievance, plaintiff also wrote a letter to Judge Jorge Rodriguez Chomat, who in response, recommended plaintiff's transfer. (Id.:1-2).

In January of 2013, plaintiff was transferred to Metro West Detention Center ("MWDC"). (DE#65:2). Soon enough plaintiff learned that members of the same gang that previously assaulted him at TGK, were also housed at his current facility. (Id.). He soon began to receive threats. (Id.). According to plaintiff, on March 5, 2013, he filed a grievance seeking to be kept separate from all inmates at all times. (Id.). In a response, dated March 13, 2013, plaintiff was asked to name all the inmates he alleges were assaulting him and/or were believed to be a threat. (Id.). In addition to filing the foregoing grievance, plaintiff also discussed his concerns with Gomez, who assured plaintiff that nothing would happen to him. (DE#65:2).

Despite Gomez's assurances, plaintiff was still forced to participate in recreation with other inmates, exposing him to further threats. (DE#65:2). In order to avoid any further attacks, plaintiff stopped attending recreation time, and chose instead, to spend the time alone in his cell in hopes of avoiding all contact with fellow inmates. (Id.).

Then, on March 15, 2013, during a routine check, plaintiff had the opportunity to communicate with Sgt. Jefferson, at which time plaintiff informed the sergeant of the threats received and his

concerns for his own safety. (DE#65:3). After this encounter, Jefferson escorted plaintiff into an interview room where they also met with Gomez. (Id.). During this meeting, plaintiff explained he had been assaulted a number of times during his stay with Miami-Dade County Department of Corrections, with the last assault occurring on June 20, 2011. (Id.). He further explained that members of the same gang that last assaulted him, were currently at MWDC, and have began to threaten him. (Id.). Despite explaining his situation to the officers, plaintiff was unable to provide the names of the individuals assaulting him. (Id.). He nonetheless expressed his concerns for his safety and requested to be kept separated from all inmates, to which the officers informed him that his request would be honored.

According to plaintiff on March 25, 2013, he filed a grievance naming the individuals who had threatened him, including inmate Anterell Dean. (DE#65:3). During this time, plaintiff alleges that despite his conversations with Gomez and Jefferson, he was still sent to recreation with other inmates, instead of being kept separated. (Id.:3-4). At some later time, Lt. Weston visited plaintiff, along with Gomez, to personally hand deliver the response to plaintiff's grievance. (Id.:4). During this interaction, Weston inquired of plaintiff whether there was anything else they could do to protect him, as he was already housed in a single man cell. (Id.). Plaintiff took this opportunity to inform Weston and Gomez of his efforts to inform other officers that he cannot be forced in a cell or to spend time at recreation with other inmates due to their possible gang affiliations. (Id.). Plaintiff also informed Weston and Gomez that despite Jefferson and Gomez's prior assurances plaintiff would not come in contact with other inmates, he continues being exposed to them. (Id.:5).

Lt. C. Weston verbally explained she will take immediate and proper measures to ensure plaintiff is kept separated from all other inmates. (DE#65:5).

Several days later, because plaintiff had to appear in court, he was transported to the pretrial detention center and escorted across the bridge cat walk, along with Inmate Dean. (DE#65:5). At the time, both, plaintiff and Inmate Dean, were in handcuffs. (Id.). They were placed together in the same holding cell. (Id.). Plaintiff states his handcuffs were removed at this time, but makes no mention whether Inmate Dean remained handcuffed. (Id.). While in the cell, plaintiff informed Officer Jane Doe that he cannot be in the same cell with Dean, but rather, he should be held in a single man cell. (Id.). However, since plaintiff's jail card failed to have any notations that he be kept separated from all inmates at all times, Officer Jane Doe forced him to stay in the same cell with Dean. (Id.:5-6).

While alone in the cell with Dean, without any provocation or warning, Dean attacked plaintiff. (DE#65:6). With his fist, Dean struck plaintiff in the face and on the top of his head. (Id.). Dean proceeded to punch plaintiff, and when plaintiff attempted to stand up, Dean grabbed him and slammed plaintiff against the toilet and wall. (Id.). In trying to defend himself, plaintiff believes he may have struck Dean. (Id.). While plaintiff was trying to get a hold of the situation, a corrections officer walked by and ordered them to stop. (Id.). This unknown officer then entered the cell and ordered Dean out, who was then taken to medical. (Id.). Plaintiff was issued an incident report to complete. (Id.:6-7).

Plaintiff was eventually taken to medical, at which time he did not feel any pain. (DE#65:7). However, the following day, he felt severe pain in his jaw, head, neck, back and shoulder. (Id.). He

9

complained to the nurse and was provided Advil for a short time period.

On May 16, 2013, plaintiff was transferred out of "special management unit south" since Inmate Dean was still housed at said location, and assigned to "special management unit north". (DE#65:7). Then, on May 23, 2013, plaintiff was transferred to pretrial detention center. (Id.). However, prior to his transfer, plaintiff filed a grievance on May 20, 2013, regarding his attack and the defendants failure to honor his request to be kept separate from other inmates. (Id.). In response to his grievance, plaintiff was informed he had never been approved to be kept separate from Inmate Dean. (Id.:8). Plaintiff maintains he was never provided copies with this grievance response, until the instant proceeding was initiated. (Id.).

While still at pretrial detention center, plaintiff asked his counselor, Mr. Rollings, about an appeal of his grievance, to which Rollings responded he could not appeal a grievance. (DE#65:8).

Plaintiff then returned to MWDC, at which time he was informed by counselor Mr. Albaquirky, that he can actually appeal the denial of his grievance. (DE#65:8). Accordingly, an appeal was filed with the intent to exhaust his administrative remedies. (Id.). In response to his appeal, plaintiff learned the time to appeal had expired. (Id.). In his defense, plaintiff asserts that not only was he unaware of the amount of days he had in which to appeal his grievance, but he also did not know the appeal had been denied until five months after the fact. (Id.).

Plaintiff sues Miami-Dade County Department of Correction for the failure of their officials in not implementing adequate policies

and/or procedures for the bridge holding cell and for those inmates in special housing. He also sues the administration's failure to enforce protocol, policy and procedures. (DE#65:9).

He also sues Lt. C. Weston, Sgt. H. Jefferson, and Cpl. R. Gomez for failing to enforce protocol, policy and procedure after attempting to obtain their protection from Inmate Dean. (DE#65:9-10). Plaintiff also faults the foregoing defendants with deliberately failing to assess the risk he faced. (<u>Id.</u>). As supervising officials, after learning plaintiff was not being kept separate from other inmates, plaintiff claims Defendants Weston, Jefferson and Gomez should have taken action and assured plaintiff's safety. (<u>Id.</u>:10). Thus plaintiff concludes, had the defendants correctly performed their duties and followed protocol, plaintiff would never have been placed in the same holding cell with Inmate Dean. (<u>Id.</u>:11).

Plaintiff also seeks to invoke pendant and/or supplemental jurisdiction. (DE#65:11).

As relief, plaintiff seeks compensatory and punitive damages in the amount of $50,000 and $5,000 for mental and emotional distress. (DE#65:11).

E. <u>Sufficiency of the Second Amended Complaint</u>

   *i. Endangerment/Failure to Protect*

It is well settled that the failure of prison officials to control or separate prisoners who endanger the physical safety of other prisoners may, under certain conditions, constitute an Eighth Amendment deprivation; however, the constitutional rights of

11

inmates are not violated every time one inmate is injured as a result of another's actions. Smith v. Wade, 461 U.S. 30 (1983); Redman v. County of San Diego, 896 F.2d 362, 364-66 (9th Cir. 1990) (pretrial detainee); Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (convicted prisoner); Stokes v. Delcambre, 710 F.2d 1120, 1124, (5th Cir. 1983); Jones v. Diamond, 636 F.2d 1364, 1374 (5th Cir. 1981); Gates v. Collier, 501 F.2d 1291, 1308-10 (5th Cir. 1974). The constitution requires officials to take all reasonable precautions to protect inmates from known dangers, see Davidson v. Cannon, 474 U.S. 344 (1986); Smith v. Wade, supra; Zatler v. Wainwright, supra; Harmon v. Berry, 728 F.2d 1407 (11th Cir. 1984); Saunders v. Chatham County Board of Commissioners, 728 F.2d 1367 (11th Cir. 1984); Abrams v. Hunter, 910 F.Supp. 620 (S.D.Fla. 1995); Gangloff v. Poccia, 888 F.Supp. 1549, 1555 (S.D.Fla. 1995). The known danger may arise either because there is a risk posed by one specific inmate against another, because there is a some other more general pervasive risk of harm because violence at the institution occurs with sufficient frequency that prisoners are put in reasonable fear for their safety and the problem and need for protective measures has been made known to prison officials, see Abrams v. Hunter, supra, at 624-25.

For a prison or jail official to be constitutionally liable for failure to protect the safety of an inmate, two requirements must be met. First, the deprivation alleged must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillian, 503 U.S. 1 (1992). Thus, for a claim based on an alleged failure to prevent harm, an inmate must show that he is incarcerated under conditions that pose a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he protection [an inmate] is afforded against other inmates" is a "condition of confinement" subject to scrutiny under the Eighth

Amendment. Wilson, supra, 501 U.S. at 303. Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," Farmer v. Brennan, supra, 511 U.S. at 834. In cases predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. Wilson v. Seiter, supra, 501 U.S. at 302-03; Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, Davidson v. Cannon, 474 U.S. 344 (1976); Estelle, supra, 429 U.S. at 104; Parker v. Williams, 862 F.2d 1471 (11th Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety.  Whitley v. Albers, 475 U.S. 312 (1986).

Thus, in order to state a claim of cruel and unusual punishment, the courts have required that a prisoner must allege a conscious or callous indifference to his rights by prison officials. Davidson v. Cannon, supra; Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982). Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which is not. When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under Section 1983. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle v. Gamble, supra, 429 U.S. at 106; Byrd v. Clark, 783 F.2d 1002, 1006 (11th Cir. 1986); Hamm v. DeKalb County , 774 F.2d 1567, 1572 (11th Cir. 1985);

Williams v. Bennett, supra 689 F.2d at 1380.

The Supreme Court has emphasized that Eighth Amendment liability requires a showing that the responsible official was subjectively conscious of risk to the inmate:

> We hold . . . that a prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.

Farmer v. Brennan, supra, 511 U.S. at 837; see also, LaMarca v. Turner, 995 F.2d 1535, 1536 (11th Cir. 1993).

Thus there must be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. See Zatler v. Wainwright, supra, 802 F.2d at 401. See also LaMarca v. Turner, supra, 995 F.2d at 1536. "Personal participation . . . is only one of several ways to establish the requisite causal connection," Zatler v. Wainwright, supra at 401, and thus, personal participation is not the sine qua non for the defendants to be found personally liable. Swint v. City of Wadley, Ala., 5 F.3d 1435, 1446 (11th Cir. 1993), opinion modified on other grounds, 11 F.3d 1030 (11th Cir. 1994). The defendant prison official must, however, ignore a substantial risk of serious harm to the inmate. Wilson v. Seiter, and Estelle v. Gamble, supra.

The allegations in the second amended complaint are sufficient to state a claim which is cognizable under §1983 for endangerment against Sgt. H. Jefferson, Lt. C. Weston, Cpl. R. Gomez and Ofc. Jane Doe, Smith v. Wade, and Zatler v. Wainwright, supra, and the

claim for endangerment should go forward as to these defendants.

*ii. Miami-Dade Department of Corrections*

The Miami Dade Department of Corrections is a County agency. To allege a §1983 action against a county a plaintiff must assert that a constitutional deprivation resulted from a custom, policy, or practice of the county. <u>Wideman v. Shallowford Community Hospital, Inc.</u>, 826 F.2d 1030, 1032 (11th Cir. 1987), and cases cited therein. Such liability, however, may not be predicated on the theory of respondeat superior. Only if the alleged constitutional violations resulted from a county custom, policy or practice of a county, may its administrators or supervisors be held liable. <u>Monell v. Dep't of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978); <u>Free v. Granger</u>, 887 F.2d 1552 (11th Cir.1989); <u>Wideman</u>, 826 F.2d at 1032. Boilerplate allegations of policy or custom, without supporting facts, are insufficient to sustain a §1983 claim. <u>See</u> <u>Hossman v. Blunk</u>, 784 F.2d 793 (7th Cir. 1986); <u>Gutierrez v. City of Hialeah</u>, 723 F.Supp. 1494 (S.D.Fla.1989).

The plaintiff has not alleged sufficient facts to support a claim against the Miami-Dade Corrections Department.

*iii. Pendant/Supplemental Jurisdiction*

Although plaintiff asserts he seeks to invoke pendant and/or supplemental jurisdiction, without more, these allegations are insufficient to proceed.

III.   <u>Recommendation</u>

1.   The second amended complaint (DE#65) should be the

       operative complaint.

2. The claim of endangerment should proceed against Sgt. H. Jefferson, Lt. C. Weston, Cpl. R. Gomez and Ofc. Jane Doe.

3. Defendant Miami-Dade Department of Corrections should be dismissed for failure to state a claim against it, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

4. Plaintiff's claims for pendant and/or supplemental jurisdiction should be dismissed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 21st day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Pleadro Scott, <u>Pro Se</u>
DOC#198737
Mayo Correctional Institution - Annex
Inmate Mail/Parcels
8784 US Highway 27 West
Mayo, FL 32066

Michael Beny Valdes, Esq.
Miami-Dade County Attorney's Office
111 NW 1st Street
Suite 2810
Miami, FL 33128