```
                                      UNITED STATES DISTRICT COURT
                                      SOUTHERN DISTRICT OF FLORIDA

                                      CASE NO. 13-CIV-23013-GAYLES
                                      MAGISTRATE JUDGE P.A. WHITE
```

PLEADRO J. SCOTT,              :

    Plaintiff,             :           <u>REPORT OF</u>
                                                                     <u>MAGISTRATE JUDGE</u>
v.                             :           (Re: DE#162)

MIAMI-DADE COUNTY, et al.,     :

    Defendants.            :
_____

## Introduction

The plaintiff has filed a <u>pro se</u> civil rights complaint pursuant to 42 U.S.C. §1983, alleging that Miami-Dade County officers and employees failed to protect him from assault by another inmate. As the record reflects, Plaintiff has amended his complaint numerous times. [<u>See</u> DE#1, 14 & 65]. Pertinent here, Plaintiff originally named the Miami-Dade County Department of Corrections as a defendant (if such an entity exists), and later amended his complaint by interlineation to reflect that the correct name of this defendant is Miami-Dade County. [<u>See</u> DE#128, 129]. The cause is before the court upon the defendant Miami-Dade County's Motion to Dismiss Plaintiff's Second Amended Complaint [DE#162], which the court construes as a motion to dismiss the claims against defendant Miami-Dade County.[1]

---

[1] As the record reflects, this case is proceeding against other defendants. As such, the court cannot dismiss the Second Amended Complaint in its entirety. Indeed, in its conclusion, the County states that "[t]he § 1983 claim against the County must be dismissed because the Complaint does not sufficiently set forth facts showing that a final policymaker was aware of a plainly obvious problem resulting in constitutional violations that could be corrected with a new policy, and deliberately disregarded that risk." (DE#162: 7).

<u>Plaintiff's Allegations</u>

As way of background, plaintiff explains that on June 20, 2011, while housed at Turner Guilford Knight Detention Center ("TGK"), he was assaulted by gang members. (DE#65:1). On that same day, he informed Cpl. Tompkins of the assault, which resulted in plaintiff's placement in a one man cell under protective custody. (<u>Id.</u>). A notification was also placed on plaintiff's jail card, placing all staff on notice that plaintiff was to be kept separate from certain individuals. (<u>Id.</u>). Notwithstanding the efforts taken for plaintiff's safe keeping, other inmates, who were also members of the gang who attacked plaintiff, nonetheless continued to make violent threats against him. (<u>Id.</u>). In addition to filing a grievance, plaintiff also wrote a letter to Judge Jorge Rodriguez Chomat, who in response, recommended plaintiff's transfer. (<u>Id.</u>:1-2).

In January of 2013, plaintiff was transferred to Metro West Detention Center ("MWDC"). (DE#65:2). Soon enough plaintiff learned that members of the same gang that previously assaulted him at TGK, were also housed at his current facility. (<u>Id.</u>). He soon began to receive threats. (<u>Id.</u>). According to plaintiff, on March 5, 2013, he filed a grievance seeking to be kept separate from all inmates at all times. (<u>Id.</u>). In a response, dated March 13, 2013, plaintiff was asked to name all the inmates he alleges were assaulting him and/or were believed to be a threat. (<u>Id.</u>). In addition to filing the foregoing grievance, plaintiff also discussed his concerns with Gomez, who assured plaintiff that nothing would happen to him. (DE#65:2).

Despite Gomez's assurances, plaintiff was still forced to participate in recreation with other inmates, exposing him to further threats. (DE#65:2). In order to avoid any further attacks, plaintiff stopped attending recreation time, and chose instead, to

2

spend the time alone in his cell in hopes of avoiding all contact with fellow inmates. (Id.).

Then, on March 15, 2013, during a routine check, plaintiff had the opportunity to communicate with Sgt. Jefferson, at which time plaintiff informed the sergeant of the threats received and his concerns for his own safety. (DE#65:3). After this encounter, Jefferson escorted plaintiff into an interview room where they also met with Gomez. (Id.). During this meeting, plaintiff explained he had been assaulted a number of times during his stay with Miami-Dade County Department of Corrections, with the last assault occurring on June 20, 2011. (Id.). He further explained that members of the same gang that last assaulted him, were currently at MWDC, and have began to threaten him. (Id.). Despite explaining his situation to the officers, plaintiff was unable to provide the names of the individuals assaulting him. (Id.). He nonetheless expressed his concerns for his safety and requested to be kept separated from all inmates, to which the officers informed him that his request would be honored.

According to plaintiff on March 25, 2013, he filed a grievance naming the individuals who had threatened him, including inmate Anterell Dean. (DE#65:3). During this time, plaintiff alleges that despite his conversations with Gomez and Jefferson, he was still sent to recreation with other inmates, instead of being kept separated. (Id.:3-4). At some later time, Lt. Weston visited plaintiff, along with Gomez, to personally hand deliver the response to plaintiff's grievance. (Id.:4). During this interaction, Weston inquired of plaintiff whether there was anything else they could do to protect him, as he was already housed in a single man cell. (Id.). Plaintiff took this opportunity to inform Weston and Gomez of his efforts to inform other officers that he cannot be forced in a cell or to spend time at recreation with other inmates due to their possible gang affiliations. (Id.).

Plaintiff also informed Weston and Gomez that despite Jefferson and Gomez's prior assurances plaintiff would not come in contact with other inmates, he continues being exposed to them. (Id.:5). He further alleges that Lt. C. Weston verbally explained she will take immediate and proper measures to ensure plaintiff is kept separated from all other inmates. (DE#65:5).

Several days later, because plaintiff had to appear in court, he was transported to the pretrial detention center and escorted across the bridge cat walk, along with Inmate Dean. (DE#65:5). At the time, both, plaintiff and Inmate Dean, were in handcuffs. (Id.). They were placed together in the same holding cell. (Id.). Plaintiff states his handcuffs were removed at this time, but makes no mention whether Inmate Dean remained handcuffed. (Id.). While in the cell, plaintiff informed Officer Jane Doe that he cannot be in the same cell with Dean, but rather, he should be held in a single man cell. (Id.). However, since plaintiff's jail card failed to have any notations that he be kept separated from all inmates at all times, Officer Jane Doe forced him to stay in the same cell with Dean. (Id.:5-6).

While alone in the cell with Dean, without any provocation or warning, Dean attacked plaintiff. (DE#65:6). With his fist, Dean struck plaintiff in the face and on the top of his head. (Id.). Dean proceeded to punch plaintiff, and when plaintiff attempted to stand up, Dean grabbed him and slammed plaintiff against the toilet and wall. (Id.). In trying to defend himself, plaintiff believes he may have struck Dean. (Id.). While plaintiff was trying to get a hold of the situation, a corrections officer walked by and ordered them to stop. (Id.). This unknown officer then entered the cell and ordered Dean out, who was then taken to medical. (Id.). Plaintiff was issued an incident report to complete. (Id.:6-7).

Plaintiff was eventually taken to medical, at which time he did not feel any pain. (DE#65:7). However, the following day, he

felt severe pain in his jaw, head, neck, back and shoulder. (Id.). He complained to the nurse and was provided Advil for a short time period.

On May 16, 2013, plaintiff was transferred out of "special management unit south" since Inmate Dean was still housed at said location, and assigned to "special management unit north". (DE#65:7). Then, on May 23, 2013, plaintiff was transferred to pretrial detention center. (Id.). However, prior to his transfer, plaintiff filed a grievance on May 20, 2013, regarding his attack and the defendants failure to honor his request to be kept separate from other inmates. (Id.). In response to his grievance, plaintiff was informed he had never been approved to be kept separate from Inmate Dean. (Id.:8). Plaintiff maintains he was never provided copies with this grievance response, until the instant proceeding was initiated. (Id.).

While still at pretrial detention center, plaintiff asked his counselor, Mr. Rollings, about an appeal of his grievance, to which Rollings responded he could not appeal a grievance. (DE#65:8).

Plaintiff then returned to MWDC, at which time he was informed by counselor Mr. Albaquirky, that he can actually appeal the denial of his grievance. (DE#65:8). Accordingly, an appeal was filed with the intent to exhaust his administrative remedies. (Id.). In response to his appeal, plaintiff learned the time to appeal had expired. (Id.). In his defense, plaintiff asserts that not only was he unaware of the amount of days he had in which to appeal his grievance, but he also did not know the appeal had been denied until five months after the fact. (Id.).

With regard to defendant Miami-Dade County, Plaintiff's asserts that the basis of his claim against it is based on its "failure to issue [adequate] policy procedures for the bridge holding cell and the inmates in special housing sues  for the failure of their officials in not implementing adequate policies

5

and/or procedures for the bridge holding cell and for those inmates in special housing, and the administration['s] failure to enforce protocol, policy, and procedures [that led] to my assault." (DE#65:9). However, in his complaint, Plaintiff alleges he was placed in a safety cell under protective custody after an alleged assault by other inmates. (Id., ¶2). He also alleges he was placed in protective custody pursuant to the County's protocols and procedures. (Id. at ¶12). Further, Plaintiff alleges that the names of the inmates who assaulted him were listed on his jail card in order to ensure he was kept separate from those inmates. (Id. at ¶2). However, he then alleges elsewhere that but then also alleges that "if . . . [a] notification [was put] on my jail card, I would not have been transported with inmate Dean" (Id. at ¶26), implying that such a notification was not made.

## Discussion[2]

Although the Supreme Court has held that local government bodies are "persons" within the scope of § 1983 and subject to liability, a § 1983 Plaintiff cannot rely upon the theory of *respondeat superior* to hold such entities liable. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); Pembaur v. Cincinatti, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A local

---

[2]The well-settled standard for a motion to dismiss for failure to state a claim, which applies on screening under the PLRA, is set forth both in the undersigned's Second Supplemental Report and defendant Miami-Dade County's Motion to Dismiss, and need not be repeated here.

6

government entity does not incur § 1983 liability for injuries caused solely by its employees. Monell, 436 U.S. at 694, 98 S.Ct. 2018. Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of an employee infer county or municipal culpability and causation. Bd. of County Com'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Instead, to impose § 1983 liability on a local government body, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. See Canton, 489 U.S. at 388, 109 S.Ct. 1197. In addition, a plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." Grech v. Clayton County, 353 F.3d 1326, 1329 (11th Cir.2003).

It is well-settled that conclusory or boilerplate allegations of a custom or policy are insufficient to state a claim against a local government entity under § 1983. Miller v. Bartow Cty., Ga., 478 F. App'x 549, 550 (11th Cir. 2012); Harvey v. City of Stuart, 296 F. App'x 824, 826 (11th Cir. 2008). Moreover, the fact that an employee of a local governmental body has violated a plaintiff's constitutional rights is insufficient to establish the employer's liability. See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.2004). Rather, in order to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality); Depew v. City of St. Marys, 787 F.2d 1496 (11th Cir.1986); Prieto v. Metro. Dade Cnty., 718 F. Supp. 934, 938-39 (S.D. Fla. 1989); Pineda v. City of Houston, 291 F.3d 325, 329 (5th

7

Cir. 2002); Tomberlin v. Clark, 1 F. Supp. 3d 1213, 1230 (N.D. Ala. 2014); Hughes v. City of Chicago, No. 08-cv-627, 2011 WL 5395752, at *5 (N.D. Ill. Nov. 8, 2011); Fowles v. Stearns, 886 F. Supp. 894, 899 (D. Me. 1995).

In certain limited circumstances, "[m]unicipal liability may [] be imposed when the absence of a policy establishing appropriate procedures to ensure against violation of a person's constitutional right results in a violation of those rights." Card v. Miami-Dade Cnty., 147 F. Supp. 2d 1334, 1343 (S.D. Fla. 2001) (Jordan, J.) (granting the County es motion for summary judgment because there was no evidence the County knew the consequences of not having a policy). For example, in Rivas v. Freeman, 940 F.2d 1491 (11th Cir. 1991), the Eleventh Circuit upheld liability based on a lack of a policy where the final policymaker had actual knowledge of prior instances of constitutional violations resulting from the policies that he formulated, but allowed his deputies to continue acting unconstitutionally. 940 F.2d at 1496. The Rivas Court did not state how many prior instances the final policymaker was aware of, but the Eleventh Circuit has held that three alleged prior similar incidents were insufficient to satisfy the "plainly obvious" threshold required for deliberate indifference. Rocker v. City Of Ocala, Fla., 355 F. App'x 312, 314 (11th Cir. 2009).

In order to expose a municipality to liability under § 1983 based on a lack of a policy, a "plaintiff cannot simply assert that there should be a policy." Tomberlin, 1 F. Supp. 3d at 1230. Rather, the plaintiff must plead enough facts to show that a final policymaker was deliberately indifferent, which requires that the final policymaker "subjectively knew of a risk of serious harm, and disregarded that risk by actions that constitute more than mere negligence." Jones v. Beasley, 645 F. App'x 840, 843 (11th Cir. 2016); see also Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005); Gold v. City of Miami, 151 F.3d 1346, 1350

(11th Cir. 1998) (noting that the Eleventh Circuit has repeatedly held that without notice of a need, a municipality is not liable as a matter of law for a failure to act).

"The Supreme Court has made it clear that, in this context, deliberate indifference only arises in 'limited circumstances' and requires a 'deliberate' or 'conscious' choice." Rocker v. City Of Ocala, Fla., 355 F. App'x 312, 314 (11th Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 387.389 (1989)). Before such liability arises, the need for the policy "must be plainly obvious to Department decisionmakers." Id. (quoting Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir.1990)). In turn, the need for such a policy cannot be "plainly obvious unless there is 'evidence of a history of widespread prior abuse.'" Id. (quoting Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir.1990); Cook, 402 F.3d at 1115 ("deliberate indifference requires that the defendant deliberately disregard 'strong likelihood rather than a mere possibility'").

Here, as set forth above, by Plaintiff's own allegations, Plaintiff admits that defendant Miami-Dade County had a policy in place to protect inmates from one another. Specifically, he alleges that he would not have been injured "if protocol had been followed and the correct documents filed." (DE#65: ¶26). As such, Plaintiff's own allegations belie any suggestion of the absence of a policy amounting to deliberate indifference to his constitutional rights.

To the extent that Plaintiff's allegations may be liberally construed to allege that the polices and procedures the defendant County did have were inadequate and, as such, amounted to unconstitutional policies and procedures, or deliberate indifference to constitutional rights, Plaintiff fails to make any allegations of a pattern of widespread abuse that would put the defendant County on notice of the need to take corrective action. Nor does he make any allegations that any final policymaker had

9

actual knowledge of prior instances of constitutional violations resulting from the allegedly inadequate policies and procedures.

Rather, not only does Plaintiff fail to identify any official who spoke with final policymaking authority for the defendant County, Plaintiff alleges facts only about his own case, and fails to allege a single fact involving other instances of alleged constitutional violations resulting from the same allegedly inadequate policies and procedures. As such, Plaintiff fails to state a claim against defendant Miami-Dade County. See Grech, 353 F.3d at 1329 (in order to state claim regarding unconstitutional custom or policy, or lack thereof, a plaintiff must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular injury); Miller, 478 F. App'x at 550 (conclusory allegations that plaintiff was injured by County's custom or policy failed to satisfy the pleading standards set out by the Supreme Court); Harvey, 296 F. App'x at 826 (vague and conclusory allegations in arrestee's civil rights complaint failed to set forth custom or policy on part of city that led to alleged constitutional violations by officers sufficient to plead claim against municipality); Tuttle, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell" unless that incident was caused by an existing unconstitutional policy attributable to a policymaker); Depew, 787 F.2d at 1499 ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy"); Prieto, 718 F. Supp. at 938-39 ("four isolated incidents . . . fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom"); Pineda, 291 F.3d at 329 ("Eleven incidents . . . cannot support a pattern of illegality in one of the Nation es largest cities and police forces"); Tomberlin, 1 F. Supp. 3d at 1230 (dismissing Monell claim because,

"[i]nstead of showing 'the repeated acts of a final policymaker,' [the plaintiff] provides only facts about his own case"); Hughes, 2011 WL 5395752, at *5 (observing that, "while at times the absence of a policy might reflect a decision to act unconstitutionally, one incident---which is all that Plaintiffs' have provided evidence of---in these circumstances is insufficient to establish the need for a policy was so obvious that the municipality effectively exercised a deliberate indifference toward [the plaintiff's] rights"); Fowles, 886 F. Supp. at 899 (refusing to infer the lack of a policy on use of force from one incident involving the plaintiff).

## Conclusion

Based on the foregoing, it is recommended that Miami-Dade County's Motion to Dismiss Plaintiff's Second Amended Complaint [DE#162] be GRANTED, only to the extent that it seeks to dismiss the claims against that defendant.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 13th day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Pleadro J. Scott
     198737
     Santa Rosa Correctional Institution
     Inmate Mail/Parcels
     5850 East Milton Road
     Milton, FL 32583
     PRO SE

     Daija Page Lifshitz
     Miami-Dade County Attorney's Office
     111 NW 1st Street, Suite 2810
     Miami, FL 33128

11